Vivian **CALHOUN** et al., Plaintiffs,

v.

Ed S. **COOK** et al., Defendants.

Civ. A. No. 6298.

United States District Court,
N. D. Georgia,
Atlanta Division.

April 4, 1973.

Warren C. Fortson, Smith, Cohen, Ringel, Kohler, Martin & Lowe, Alfred L. Evans, Jr., Asst. Atty. Gen., Atlanta, Ga., for defendants.

Howard Moore, Jr., Elizabeth R. Rindskopf, Atlanta, Ga., Jack Greenberg, James M. Nabrit, III, Norman J. Chachkin, Charles Stephen Ralston, New York City, Benjamin W. Spaulding, Margie Pitts Hames, Hames & Hyatt, Atlanta, Ga., for plaintiffs.

Charles S. Conley, Montgomery, Ala., for Congress of Racial Equality, Inc., Applicant for Intervention.

Nathaniel R. Jones, New York City, Bobby L. Hill, Atlanta, Ga., John H. Ruffin, Augusta, Ga., Samuel Tucker, Henry Marsh, Hill, Tucker & Marsh, Richmond, Va., Tom Sampson, John L. Kennedy, Kennedy, Bussey & Sampson, Atlanta, Ga., for NAACP, Applicant for Intervention.

Before SIDNEY O. SMITH, Jr., Chief Judge, and ALBERT J. HENDERSON, Jr., District Judge.

PER CURIAM.

This is an ancient class action filed in 1958 involving the desegregation of the Atlanta Public Schools, brought on behalf of the parents of all black students enrolled therein. In concept, it is a classic civil rights class action under old Rule 23(a)(3). E. g. Potts v. Flax, 313 F.2d 284 (5th Cir. 1963).

Heretofore, on February 23, 1973, the plaintiffs and defendants presented to the court a jointly proposed plan for settlement and final resolution of all issues covered therein. The court has carefully reviewed the plan and it appears that the plan was freely evolved by the parties, together with the Biracial Committee previously appointed by the court,

and that the plan is consented to by an attorney of record for each of the parties for its adoption by the court.

## THE SETTLEMENT.

At a prior hearing for such purposes on December 28, 1972, the question of representation was heard and all parties and persons were granted an opportunity to object to representation of record. None were advanced.[1] By voluntary agreement, it was then determined by the court that the plaintiffs were to be represented exclusively thereafter by Attorneys Howard Moore, Jr., Elizabeth R. Rindskopf, and Benjamin W. Spaulding, jointly and severally, in all their dealings with defendants, and the court.[2] It is undisputed that Mrs. Rindskopf and Mr. Spaulding, in the absence of Mr. Moore, were designated to handle the settlement negotiations for the entire plaintiff class and did, in fact, proceed in good faith to do so through numerous lengthy conferences for such purpose. Substantial portions of the plan were drafted by both. When the agreed plan was filed with the court on February 23, 1973, it was signed by Attorney Spaulding only. Upon inquiry, Attorney Rindskopf stated that she had "no objections" to its adoption by the court and had the express authority to allow its approval in such posture. However, since that time, she advised the court that her authority to do so has since been withdrawn by her employers. Thus, at the March 8th hearing, she and Attorney Moore made appearances to present objections to acceptance of the plan by the court.

 Where the record reveals that counsel in fact (as here) negotiated and agreed on a compromise prior to trial, federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced by the court. See Cia Anon Venezolana De Navegacion v. Harris, 374 F.2d 33 (5th Cir. 1967) and the compendium of authorities therein. There, as here, it was contended. that the attorney's authority had been withdrawn between the time of settlement and court approval or consummation. See also Ga.Code, § 9–605; e. g. Elliott v. Elliott, 184 Ga. 417, 191 S. E. 465 (1937). Under such circumstances, the court views such eleventh hour maneuvering as inconsequential and without legal effect. The question presently before the court is the advisability of approval under Rule 23(e).

## THE NOTICE.

The filing of the plan and the hearing of March 8th received wide publicity within the several schools and through the local press, radio and television and the court is satisfied that all interested persons were more aware of its pendancy by such means than could possibly be effected by a legal notice or otherwise to the parents of some 75,000 black school pupils enrolled in the Atlanta system, and comprising the plaintiff class.

However, notice by such means was questioned at the hearing. Accordingly, by an order of March 12th, the court ordered publication of notice of the pending settlement proposal in the newspapers of general circulation in the City[3] on a daily basis until another hearing on March 29th. Copies of the proposal were made available at the Clerk's office, the School Board office, and during

---

1. One was stated (by Mrs. Hames), but withdrawn for the purposes of the issues covered by the settlement (TR 12).

2. On this basis, several attempts to intervene by groups such as CORE, NAACP, etc. allegedly representing individuals in the plaintiff class were denied. However, the court considered these diametrically opposed views on an amicus basis.

3. The notice was published in:
 The Atlanta Journal
 The Atlanta Constitution
 The Atlanta Daily World
 The Atlanta Inquirer
 The Fulton Reporter.

both day and night hours at a centrally located school in each of the City's Wards.

Both hearings were well attended and numerous counsel, officials, parties, and other interested persons stated their views to the court.[4] In addition, both formal and informal written communications were received by the court,[5] all of which have been considered and filed.

THE PLAN.

■ The plan incorporates the mandatory Fifth Circuit provisions of majority-to-minority transfer [United States v. Jefferson County Board of Education, 372 F.2d 836(94) (5th Cir. 1966)] and faculty and staff desegregation[6] [Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1970)]. It also provides a reasonable pupil assignment plan considering the small percentage of white children (21%) now remaining in the system, and all white pupils are assigned to integrated schools.[7] This preponderance of blacks is in itself a unique situation. Under such circumstances, it is not necessary to distribute the remaining minority whites pro-rata throughout the entire system. Harris v. St. John the Baptist Parish, La., 419 F.2d 1211, 1221 (5th Cir. 1969); Lee v. Macon County Board of Education, 429 F.2d 1218 (5th Cir. 1970); Hightower v. West, 430 F.2d 552 (5th Cir. 1970); Love v. Dade County School Board, 447 F.2d 150 (5th Cir. 1971), cert. den., 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794; United States v. State of Georgia, No. 12974 (N.D.Ga.) (Order of Aug. 15, 1971, Hancock County, Ga). The proposal, together with the previous orders of the court, produces a result which, in light of the circumstances present, is "viable, realistic and workable." Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). The fact that it might be handled differently in some particular is irrelevant. Carr v. Montgomery County Board of Education, 429 F.2d 382 (5th Cir. 1970). It likewise properly meets

4. Several efforts to subpoena witnesses to testify as to the merits of the plan and several alternate proposals were quashed. The facts have been developed in numerous prior hearings and the case has been thoroughly tried prior to this time. The court sees no need, in the present posture, to retry these issues again.

5. The court has received some 30-odd separate items in writing by letter, resolution, or amicus brief. Most objections, other than those filed by counsel, appear to be from objecting white parents, not in the plaintiff class. Some members of the class object to the plan because of the busing proposed. Many urge adoption by the court. Several thousand of the plaintiff class have signed petitions urging approval by the court. On balance and considering the size of the plaintiff class, the objections appear minimal in number.

6. Prior to the last appeal, the court ruled that there need not be an annual reassignment of faculty and staff under Singleton, Pages 2–5, Order of June 8, 1972. While that ruling was not covered in the last re-

mand, it seems clear that it is correct. Carter v. West Feliciana Parish School Board, 425 F.2d 875, 879 (5th Cir. 1970). See also Swann v. Board of Education, 402 U.S. 1(8), 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). The problem is specifically handled by the agreed plan, which provides for a strict *Singleton* assignment for three years retrospectively or prospectively. The court, of course, could not on its own order any hiring or firing except on the basis of merit. Carter v. West Feliciana Parish School Board, supra. Only by settlement could specific jobs be designated as "black" or "white," even for initial appointment.

7. Basically, the plan provides that all schools contain no less than 30% blacks. Under exceptional circumstances where an integrated school has already stabilized it may be no less than 20% black. (Plan, P. 16). The corrective addendum to the Plan, which the court was notified would be forthcoming by Attorneys Rindskopf and Fortson on February 23rd, does not appear to cause any substantial change in the basic plan.

the specifics of settlement contained in the Fifth Circuit interim directive of October, 1972 (P. 3).

However, it omits the semi-annual reporting provisions for the period of three years. United States v. Hinds County School Board, 433 F.2d 611 (5th Cir. 1970). Additionally, the court approves the suggestion that the quarterly consultations be under the directions of the court-appointed Biracial Committee for the period of three years. By way of clarification that committee is now composed of the following members:

| | |
|---|---|
| Lyndon A. Wade, Chairman | B. N. Brinkley |
| D. Anna Grant | L. L. Gellerstedt, Jr. |
| Dr. Juel Borders Benson | Dr. Vivian W. Henderson |
| John Lewis | Jesse Hill, Jr. |
| John Cox | Mrs. Odessa Hill |
| A. H. Sterne | Mrs. Harvey Jacobson |
| John Wilson | Senator Leroy R. Johnson |
| Michael H. Trotter | Mrs. Luna B. Ransbotham |
| Pollard Turman | Rev. E. Randolph Taylor |
| Robert L. Cousins | Dr. Judson C. Ward |

Mr. Lyndon Wade is hereby redesignated as Chairman until further order of the court. It is further directed that all disagreements between the parties over implementation of the plan, if any, be first presented to the Biracial Committee, or a subcommittee designated for such purpose, during said three-year period at a quarterly or special meeting for such purpose.[8] No issue will be considered by the court until such procedure is followed and the Biracial Committee certifies to the court that it is unable to resolve the dispute.

With these additions, there is no legal impediment to the adoption of the plan by this court.

Any plan, whether privately conceived, jointly proposed, or court imposed, contains features which are objectionable to certain individuals or certain groups; and there is no way known to the law to satisfy all the patrons of the separate schools. This plan, at least, appears to the court to satisfy the overwhelming majority of the plaintiff class. On the whole, the plan is deemed fair, adequate, and reasonable. Accordingly, upon due consideration of the motion, the stated objections and amicus briefs, with the indicated changes, the proposed plan is approved both (a) as a proper settlement under Rule 23(e) and (b) insofar as lawful on its merits, and

It is hereby ordered and adjudged that said plan be and the same is hereby adopted as the final decree of the court with the additional provisions:

1. That the defendant furnish to the court a semi-annual report on October 1 and April 1 of the school years 1973–74, 1974–75, and 1975–76 covering the information set out in the Appendix to United States v. Hinds County School Board, 433 F.2d 611 (5th Cir. 1970).

2. That either party first present to the Biracial Committee any disagreement regarding the operation of this order prior to filing a motion with the court.

All prior orders in conflict with this decree are hereby superseded. The matters contained in this suit and previously consolidated with the case of Armour, et al v. Nix, et al, No. 16708, are reserved for future ruling.

It is so ordered.

8. This reiterates the court's order of December 21, 1971.